UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH T. STROPLE,

      Plaintiff,

v.                                        CASE NO. 3:13-cv-1518-J-34MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

      Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on *pro se* Plaintiff's appeal of an administrative decision denying his applications for Child Insurance Benefits and Supplemental Security Income. A hearing was held before an Administrative Law Judge ("ALJ") on July 5, 2012, at which Plaintiff was represented by counsel. (Tr. 40-73.) On August 23, 2013, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 23-34.) Plaintiff submitted a request for review of the ALJ's decision, which was denied on September 13, 2013 (Tr. 5-10). Accordingly, the ALJ's decision is the final decision of the Commissioner.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

1

I. **Nature of Disability Claim**

A. **Basis of Claimed Disability**

Plaintiff protectively filed applications for Child Insurance Benefits and Supplemental Security Income on August 26, 2010. (Tr. 174-75, 176-79.) Plaintiff claims to have been disabled since May 31, 2009, due to obsessive compulsive disorder ("OCD"), post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, congenital hairy nevus with neurological consideration, depression, a neurological disorder, attention deficit disorder, and social anxiety. (Tr. 192.)

B. **Summary of Medical Evidence Before the ALJ**

On December 10, 2004, Plaintiff received treatment from Dr. David Coulter, M.D., of Cape Cod Pediatrics. (Tr. 260-61.) Plaintiff was referred to Dr. Coulter in connection with an impairment called "Congenital Giant Hairy Nevus with Neurological Consideration."[2] (Tr. 260.) The purpose of the examination was to determine whether the impairment had caused Plaintiff to experience neurological difficulties. (*Id.*) Examination showed Plaintiff suffered from an eye disorder, which Dr. Coulter opined could be indicative of a neurological problem. (*Id.*) Dr. Coulter also noted Plaintiff demonstrated a slight head tilt. (*Id.*) Based on his findings, Dr. Coulter arranged for Plaintiff to undergo an MRI scan of his brain to determine whether these symptoms arose from his congenital condition.

---

[2] Plaintiff advises the impairment manifested as a large irregular mole covering one-third of his back at birth. (Doc. 26 at 1.) Plaintiff reports the nevus covering his back was removed; however, he indicates the condition continues to cause symptoms.

2

On December 13, 2004, Dr. Stephen Sweriduk of Shields MRI conducted the MRI scan of Plaintiff's brain. (Tr. 259.) Findings revealed no signal abnormality in Plaintiff's parenchyma. (*Id.*) The scan further showed Plaintiff's ventricles were normally sized and positioned. (*Id.*) Dr. Sweriduk concluded the scan was unremarkable. (*Id.*)

In January and February of 2009, Plaintiff attended therapy at Atlas Behavioral, P.A. ("Atlas Behavioral"), due to concerns regarding PTSD, OCD, and poor coping skills. (Tr. 287, 288.) Plaintiff attended the sessions with his mother, who reported Plaintiff had exhibited anger issues beginning in the sixth grade. (Tr. 288.) Plaintiff denied his mother's representations, and denied experiencing symptoms of OCD or PTSD. (*Id.*) However, Plaintiff admitted to being sexually molested by his father at the age of four. (*Id.*) During the February session, Plaintiff was visibly upset with his mother. (Tr. 287.) Plaintiff denied her statements indicating he experienced PTSD, depression, anxiety, irritability, sleep problems, or suicidal ideation. (*Id.*) However, Plaintiff admitted to having difficulty dealing with stress. (*Id.*) Plaintiff left the session early when it became his mother's turn to speak at length. (*Id.*)

In April of 2010, Plaintiff was referred to Stewart Marchman ACT by court order for substance abuse treatment in response to a petition filed by his mother. (Tr. 271-81, 283-86.) During treatment, Plaintiff reported using tobacco, alcohol, marijuana, and benzodiazepine. (Tr. 275.) Mental status exam showed Plaintiff exhibited correct orientation, a euthymic mood, a full range of affect, a good

short-term memory, a good long-term memory, speech within normal limits, appropriate motor behavior, and average intellectual functioning. (Tr. 278.) Plaintiff's thought process was logical, coherent, and spontaneous. (*Id.*) Treatment notes reported Plaintiff did not recognize the severity of his addictions, and described Plaintiff as being difficult to interview due to his guarded demeanor. (Tr. 279.) Plaintiff reported his family had a history of drug abuse, and admitted to being molested by his natural father at the age of two. (Tr. 280.) Plaintiff was assessed a Global Assessment of Functioning ("GAF") score of 48.[3] (*Id.*)

On June 14, 2010, Plaintiff attended therapy at Atlas Behavioral, where he treated with Advanced Nurse Practitioner Kathleen Vacchelli. (Tr. 362.) Treatment records noted Plaintiff was having difficulty in school. (*Id.*) Plaintiff was described as having violent tendencies, and tending to blame others for his problems. (*Id.*) Plaintiff was diagnosed with PTSD, bipolar disorder, and polysubstance abuse. (Tr. 363.)

---

[3] The GAF is a 100–point scale divided into 10 numerical ranges, which permits clinicians to assign a single-ranged score to a person's psychological, social, and occupational functioning. *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012) (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)).  GAF scores of 41 to 50 indicate serious symptoms (suicidal ideation, severe obsessional rituals, or frequent shoplifting) or any serious impairment in social, occupational, or school functioning (having no friends or being unable to keep a job); scores of 51 to 60 indicate moderate symptoms (flat affect and circumstantial speech or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (having few friends or conflicts with peers or coworkers); scores of 61 to 70 indicate the presence of some mild symptoms (e.g., depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and having some meaningful interpersonal relationships. (*Id.*)

On November 24, 2010, Plaintiff underwent a psychiatric examination conducted by consultative examiner Dr. Sherry Risch, Ph.D. (Tr. 322-26.) Dr. Risch noted Plaintiff had attended therapy sessions at Atlas Behavioral; however, it was also noted that Plaintiff no longer attended these sessions because his mother had "kicked him out of her house." (Tr. 323.) Plaintiff was described as an attractive young man who demonstrated clear speech, good pronunciation, and good hygiene. (Tr. 324.) Dr. Risch noted Plaintiff laughed in response to questions regarding his drug use, and indicated he thought it was funny. (*Id.*) Dr. Risch reported Plaintiff showed no observable signs of a disability. (*Id.*) During examination, Plaintiff was able to recall the name of the current president, as well as the names of the past two presidents in receding order. (*Id.*) Plaintiff was able to count backwards from twenty to zero, and count by threes from one to forty without mistake. (*Id.*) Plaintiff was able to spell the word "world" forwards, but had difficulty spelling it backwards. (*Id.*) Dr. Risch noted Plaintiff appeared disinterested in the evaluation, and described him as being socially immature. (Tr. 325.) Plaintiff was diagnosed with cannabis dependence, and assigned a GAF score of 70. (*Id.*) Dr. Risch opined Plaintiff was capable of learning job rules and following instructions. (Tr. 326.) Dr. Risch further opined Plaintiff was able to appropriately interact with coworkers and supervisors, and was capable of working with the public. (*Id.*)

On December 14, 2010, Dr. Richard Gann, M.D., completed a Psychiatric Review Technique form ("PRTF") based on Plaintiff's medical evidence. (Tr.

327-40.)  Based on his review, Dr. Gann concluded Plaintiff did not suffer from any severe impairments.  (Tr. 327.)  Dr. Gann further found Plaintiff experienced no restrictions in his activities of daily living; mild difficulties in maintaining social functioning; mild limitations in concentration, persistence, and pace; and experienced no episodes of decompensation.  (Tr. 337.)  Dr. Gann's findings were adopted by state agency consultant Pamela Green, Ph.D. on April 18, 2011.

In January, February, March and April of 2011, Plaintiff attended therapy at Atlas Behavioral, where he treated with ARNP Vacchelli and Licensed Clinical Social Worker John Laforte.  (Tr. 373-90.)  Treatment notes during this time generally reflect that Plaintiff demonstrated a dysthymic mood, flat affect, and minimal participation.

## II.    Summary of the ALJ's Decision

In reaching his decision, the ALJ followed the five step sequential evaluation process provided by 20 C.F.R. § 416.920(a)(4).[4]  (Tr. 23-34.)  At the first step, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 31, 2009, his alleged onset date, and had not obtained the age of 22 as of that date.  (Tr. 25.)  At the second step, the ALJ found that Plaintiff suffered from three severe impairments: cannabis dependence, post-traumatic stress disorder, and obsessive compulsive disorder.  (*Id.*)  However, at the third step,

---

[4] Because Plaintiff was eighteen years of age on the date his applications were filed, the disability rules used for adults who file new claims applied to him.  20 C.F.R. §§ 416.920(a)(2), 416.924(f).

6

the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 26-27.)  Accordingly, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found plaintiff was able to perform:

> A full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine, repetitive, tasks with up to 3-step commands with occasional changes in the workplace, occasional judgment and occasional decision[-]making. He is to have no interaction with the general public and only occasional interaction with coworkers.

(Tr. 27-32.)  At the fourth step, the ALJ found Plaintiff had no past relevant work experience.  (Tr. 32.)  At the fifth step, based on Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs which existed in significant numbers in the national economy which Plaintiff was able to perform.  (Tr. 33.) Specifically, the ALJ found Plaintiff was able to perform the duties of a kitchen helper (DOT # 318.687-010), a cleaner (DOT # 323.687-010), and a garment bagger (DOT 920.687-018).  (*Id.*)  Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 31.)

## II.   Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant

7

evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## III.    Discussion

Plaintiff raises three issues on appeal.[5] First, Plaintiff asserts the Commissioner inappropriately attempted to exclude medical evidence from his record. (Doc. 26 at 4.) Second, Plaintiff argues the ALJ discriminated against him due to his age and history of marijuana use. (Doc. 26 at 3-4; Doc. 29 at 2.) Third, Plaintiff indicates he was dissatisfied with his representation at the administrative hearing. (Doc. 26 at 2; Doc 29 at 3.) The undersigned will address each claim in turn.

---

[5] Plaintiff's memorandum is signed by Plaintiff; however, the document appears to have been prepared in significant part by his mother.

8

### A.     Whether the Commissioner Failed to Appropriately Consider Evidence Submitted to the Appeals Council

Plaintiff first asserts the Commissioner improperly attempted to exclude certain items of evidence submitted in support of his claim of disability.  (Doc. 26 at 4.)  Specifically, Plaintiff asserts he must be "granted the right to add the rest of the information that has already been sent; however, the SSA is trying to keep out."  (*Id.*)  Contrary to Plaintiff's claim, the transcript of the administrative hearing reflects that the ALJ allowed Plaintiff to file additional evidence after the administrative hearing was conducted.  (Tr. 43-44.)  Moreover, the record further reflects that the Commissioner accepted additional documents when Plaintiff sought review of the ALJ's decision by the Appeals Council.  (Tr. 373-99.)  Accordingly, Plaintiff's claim of error fails to the extent he asserts the Commissioner attempted to exclude evidence from his medical records.  However, "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007).  Accordingly, the Court must consider whether the additional evidence submitted to the Appeals Council rendered the ALJ's decision unsupported by substantial evidence.  (*Id.*)

A social security claimant generally is permitted to present new evidence at each stage of the administrative process.  *See* 20 C.F.R. § 404.900(b); *see also Ingram,* 496 F.3d at 1261.  While the Appeals Council generally has the

9

discretion not to review the ALJ's denial of benefits, 20 C.F.R. § 404.967, it must consider "new and material evidence" that "relates to the period on or before the date of [the ALJ's] hearing decision," and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 416.1470(b).  A district court may remand a matter to the Commissioner in light of such evidence pursuant to either sentence four or sentence six of 42 U.S.C. § 405(g).  *Ingram,* 496 F.3d at 1261.  With respect to a sentence four remand, the claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole or, similarly, that the new evidence renders the denial of benefits erroneous.  *Id.* at 1262, 1266-67; *see also* 20 C.F.R. § 416.1470(b).  By contrast, a sentence six remand is appropriate only where the claimant submits evidence for the first time to the district court that might have changed the outcome of the administrative proceeding.[6]  *Ingram,* 496 F.3d at 1267–68.

In this case, Plaintiff submitted two items of evidence to the Appeals Council subsequent to the issuance of the ALJ's decision.  First, Plaintiff submitted a narrative report of a mental status evaluation conducted by ARNP Vacchelli of Atlas Behavioral dated July 3, 2012.  (Tr. 392-95.)  Second, Plaintiff submitted a Mental Residual Functional Capacity ("MRFC") completed by ARNP

---

[6] Sentence six is not applicable to this case as the evidence was submitted for the first time to the Appeals Council.  *Ingram,* 496 F.3d at 1267.

Vacchelli on August 22, 2011.  (Tr. 396-99.)  The following provides a brief description of these documents.

The report dated July 3, 2012 noted Plaintiff attended an evaluation with ARNP Vacchelli in connection with his applications for Social Security benefits. (Tr. 392.)  ARNP Vacchelli stated Plaintiff denied experiencing problems with sleep or appetite, denied having nightmares or flashbacks, and endorsed no phobias.  (Tr. 393.)  The report indicated Plaintiff had suicidal ideations, but no past attempts or gestures.  (*Id.*)  Plaintiff reported using marijuana one month prior to the date of the evaluation, and drinking alcohol once during the previous week.  (*Id.*)  ARNP Vacchelli described Plaintiff as being guarded, having a flat mood, and being angry.  (Tr. 394.)  During evaluation, Plaintiff denied experiencing hallucinations, having phobias, or engaging in self-injurious behaviors.  (*Id.*)  Plaintiff demonstrated fair insight, fair judgment, clear speech, and a below average fund of knowledge.  (*Id.*)  ARNP Vacchelli's summary of the interview stated Plaintiff had poor social skills and a lack of motivation to change. (*Id.*)  ARNP Vacchelli also stated she did not feel qualified at that time to diagnose Plaintiff with Asperger's Syndrome despite suggestions from his mother that he suffered from the condition.  (*Id.*)  Instead, Plaintiff was diagnosed with ADHD, a history of polysubstance abuse, and intermittent explosive disorder. (*Id.*)  Plaintiff was assigned a Global Assessment of Functioning ("GAF") score of 62.  (*Id.*)

The second item of evidence submitted to the Appeals Council was a MRFC form completed by ARNP Vacchelli on August 22, 2011.  (Tr. 396-99.) The form requested information regarding the degree of difficulty Plaintiff would likely experience with regard to sixteen areas of work related activities.  (*Id.*)  The activities were divided into three categories: social interaction, sustained concentration and pace, and adaptation.  (*Id.*)  The severity of Plaintiff's difficulties with these activities were rated using the following scale: None, Mild, Moderate, Marked, and Extreme.  (*Id.*)  ARNP Vacchelli's findings indicated Plaintiff would likely experience marked difficulties in all four activities of social interaction.  (Tr. 396.)  With regard to sustaining concentration and persistence, ARNP Vacchelli indicated Plaintiff would likely experience extreme limitations in maintaining attention for more than brief periods of time, marked difficulties in completing tasks in a normal work day, marked limitations in working with others, and marked limitations in performing at production levels expected by employers. (Tr. 397.)   With regard to adaptation, ARNP Vacchelli opined Plaintiff would experience extreme limitations in acting predictably and reliably, extreme limitations in tolerating work pressures, marked limitations in adapting to changes in the work setting, and marked limitations in maintaining personal appearance and hygiene.  (*Id.*)

Upon review of the evidence submitted to the Appeals Counsel, the narrative report authored by ARNP Vacchelli is cumulative of the other evidence of record, and would not be expected to change the ALJ's decision.  While the

12

MRFC form completed by ARNP Vacchelli raises a closer question, the undersigned finds this document also would not change the administrative outcome. As the Commissioner argues, ARNP Vacchelli's assessments in the MRFC are inconsistent with her other findings in the narrative report, including her GAF score assessment of 62. (Tr. 394, 96-98.) See *McNeill v. Astrue*, 2011 WL 6005289, at *11 (N.D. Fla. Nov. 1, 2011) *report and recommendation adopted by*, 2011 WL 6005288 (N.D. Fla. Nov. 30, 2011) (stating a GAF score of 55 to 60 is inconsistent with marked functional limitations assessed in a Mental Impairment Questionnaire); *see also Crist v. Astrue*, 2008 WL 821934, at *7 (M.D. Fla. Mar. 26, 2008) (finding doctor's assessment of marked functional limitations in fourteen areas of functioning appeared to be an overstatement in light of the same doctor's assessment of GAF scores ranging between 55 and 60 over the previous year). As the Commissioner notes, GAF scores ranging from 61-70 are generally considered to be consistent with no more than mild symptoms, or with having some difficulty in social, occupational, or scholastic functioning. In addition, the ALJ's decision is supported by the weight of the record as a whole, and the addition of the MRFC form does not render the ALJ's decision unsupported by substantial evidence. Specifically, the ALJ's findings are supported by the opinion of consultative examiner Dr. Sherry Risch, who opined Plaintiff had the cognitive resources with which to learn job rules and follow instructions, and the ability to appropriately interact with coworkers and supervisors. (Tr. 362.) The ALJ's decision is also supported by the testimony of

Plaintiff's mother at the administrative hearing that Plaintiff would likely be able to perform a reduced range of simple, routine, unskilled work if he underwent vocational rehabilitation. (Tr. 62.) Notably, the ALJ assessed mental limitations beyond those identified by the state agency specialists who found Plaintiff did not suffer from a severe impairment. (Tr. 337.) Because the MRFC form completed by ARNP Vacchelli does not render the ALJ's decision unsupported by substantial evidence, the undersigned recommends finding the Commissioner did not err in considering the evidence submitted to the Appeals Council.

### B. Whether the ALJ Discriminated Against Plaintiff Due to His Age and History of Marijuana Use

Plaintiff next argues the ALJ discriminated against him on the basis of his age and history of marijuana use. (Doc. 26 at 3-4.) Specifically, Plaintiff argues the ALJ discriminated against him because he is young, looks normal, and admitted to smoking marijuana. (Doc. 29 at 2.) Plaintiff contends "this discrimination would not be tolerated if [he] was an elder person; therefore, it is unacceptable that this kind of reverse discrimination due to [his] young age be allowed." (Doc. 26 at 4.) The Commissioner responds by arguing the ALJ did not discriminate against Plaintiff. (Doc. 28 at 19-11.) Specifically, the Commissioner contends the ALJ's references to Plaintiff's history of marijuana use were appropriate because the medical evidence is replete with references to Plaintiff's chronic marijuana use and admonitions that Plaintiff should stop smoking. (*Id.*)

14

A social security plaintiff is entitled to a full and fair hearing. See *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996). For a hearing to be full and fair, the ALJ presiding over the hearing must not be prejudiced or partial in any way. See 20 C.F.R. § 416.1440. An ALJ's bias is disqualifying if it "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case." See *Borgens ex rel. Borgens v. Halter,* 164 F. Supp. 2d 1309, 1329 (M.D. Fla. 2001) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S. Ct. 1698 (1966)). Bias cannot arise from the ALJ's view of the law; it must be personal. See *First Nat'l Monetary Corp., v. A.J. Weinberger,* 819 F.2d 1334, 1337 (6th Cir.1987) (citations omitted). In addition, an ALJ is presumed to be unbiased, and a claimant challenging this presumption carries the burden of proving otherwise. See *Schweiker v. McClure,* 456 U.S. 188, 195 (1982); *Borgens,* 164 F. Supp. 2d at 1329.

In the instant case, the ALJ inquired into Plaintiff's use of marijuana at the administrative hearing, and referenced Plaintiff's drug use in his decision. (Tr. 28, 32, 47, 59.) As the Commissioner notes, this is explained in part by the ALJ's duty to consider the medical evidence of record, which itself contained many references to Plaintiff's use of marijuana, indications that Plaintiff did not consider his drug use to be a problem, and warnings from treating sources that he should stop smoking. (Tr. 279, 280, 324, 347, 362, 363, 388, 393.) The ALJ also noted Plaintiff's marijuana use in discounting testimony from Plaintiff's mother that

Plaintiff lacked the financial ability to obtain medical examinations during the relevant period.[7] (Tr. 32.) However, the ALJ's statements were not extrajudicial in nature, and did not result in the issuance of a decision based on information obtained from outside of the ALJ's participation in the case. *See Borgens,* 164 F. Supp. 2d at 1329. *See also Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) (finding an ALJ did not demonstrate improper prejudice toward the claimant by inquiring whether he was aware that smoking was unhealthy, and eliciting testimony that the he spent at least $100 per month on cigarettes). Moreover, the decision did not focus exclusively on Plaintiff's drug use, but also relied on reports of Plaintiff's activities of daily living, reports of Plaintiff's social functioning, review of the medical evidence as a whole, and testimony from Plaintiff and his mother at the administrative hearing. *See McCrea v. Astrue*, 407 F. App'x 394, 397 (11th Cir. 2011) (finding an ALJ's misstatements at the administrative hearing that claimants who used drugs were not eligible for disability benefits did not show the ALJ was biased where the decision issued did not focus exclusively on the claimant's drug use, and considered the claimant's records as a whole). Accordingly, the undersigned recommends finding the ALJ did not discriminate against Plaintiff based on his history of marijuana use.

---

[7] The ALJ stated, "[Plaintiff's mother] chooses to give [Plaintiff] money to pay for his marijuana use rather than pay for some medical care. The undersigned does not find her testimony compelling in light of her acknowledgement that she provides him money to purchase marijuana, which she stated he smokes on a regular basis." (Tr. 32.)

16

Plaintiff also asserts the ALJ improperly discriminated against him on the basis of his age; however, there is no indication of this in Plaintiff's record. Notably, the Code of Federal Regulations requires an ALJ to consider many factors, including a claimant's age, in determining whether he or she is able to perform work related activities. *See* 20 C.F.R. § 416.960 ("We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience, as appropriate in your case."). Indeed, the Code of Federal Regulations anticipates that a younger individual will generally be able to more easily adjust to the requirements of new work than an older individual. *See* 20 C.F.R. § 416.963 ("If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45–49 are more limited in their ability to adjust to other work than persons who have not attained age 45."). Moreover, the Eleventh Circuit has held that an ALJ must consider a claimant's age on a case-by-case basis in adjudicating claims of disability. *Broz v. Heckler*, 721 F.2d 1297, 1299 (11th Cir. 1983) ("We therefore reaffirm our prior holding that in the context of disability hearings the effect of age must be treated on a case-by-case basis."). Because the ALJ was required to consider Plaintiff's age in considering Plaintiff's claim of disability, the undersigned recommends finding the ALJ did not discriminate against Plaintiff on the basis of age.

### C. Whether Plaintiff's Dissatisfaction with His Counsel Warrants Remand

Finally, Plaintiff indicates he was dissatisfied with the quality of his representation at the administrative hearing; however, Plaintiff's dissatisfaction does not give rise to a claim for remand. As noted by the Fifth Circuit, "[t]he Supreme Court has never recognized a constitutional right to counsel in Social Security proceedings." *Cornett v. Astrue*, 261 F. App'x 644, 651 (5th Cir. 2008) (rejecting ineffective assistance of counsel claim where plaintiff was denied supplemental security income). Further, Plaintiff's dissatisfaction with his counsel does not provide a basis for remand as "there is no principle of effective assistance of counsel in civil cases." *Slavin v. Comm'r,* 932 F.2d 598, 601 (7th Cir.1991). Therefore, a social security claimant who was represented by counsel of his own choosing cannot at a later time complain that the representation was inadequate. *See Hettinger v. Richardson,* 365 F. Supp. 1245, 1246 (E.D. Pa. 1973); *Russell ex rel. Russell v. Chater,* 62 F.3d 1421 (8th Cir. 1995) (unpublished table decision) (holding the social security claimant's argument regarding the ineffective assistance of her retained counsel "not cognizable in this type of action.").

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **AFFIRMED**.

2. The Clerk of Court be directed to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on January __28th__, 2015.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Pro se Plaintiff

Counsel of Record